IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| William P. Danielczyk, Jr., | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | 1:14cv1332 (JCC/TCB) |
| | ) | |
| Federal Bureau of Prisons, | ) | |
|     Respondent. | ) | |

MEMORANDUM OPINION

William P. Danielczyk, Jr., a federal inmate housed in the Eastern District of Virginia and proceeding pro se, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging lack of due process in institutional disciplinary proceedings. On February 11, 2015, respondent filed a motion for summary judgment with a supporting memorandum of law and exhibits. Petitioner was advised of his right to file responsive materials, as required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Civil Rule 7(K). After receiving an extension of time, petitioner submitted a response in opposition to the motion to dismiss, two general affidavits, and a declaration on April 2, 2015. Respondent replied to petitioner's response on April 6, 2015. Accordingly, this matter is ripe for disposition. For the reasons which follow, respondent's Motion for Summary Judgment will be granted, and summary judgment will be entered in its favor.

I. Background

The following material facts are uncontroverted. Petitioner is currently confined at FCI Petersburg as the result of two convictions entered in the Eastern District of Virginia. See United

1

States v. Danielczyk, Case No. 11cr85 (JCC) (plea of guilty to contributions in the name of another entered 2/26/13); United States v. Danielczyk, Case No. 14cr146 (JCC) (plea of guilty to willful failure to collect and pay taxes and theft or embezzlement from an employee benefit plan entered June 10 2104). His projected release date is December 15, 2015. Resp. Ex.1 at ¶ 4.[1]

On October 22, 2013, while confined at FCI Talledega, petitioner was charged by incident report with the prohibited act of refusing to provide a urine sample. Id. at ¶ 9. The incident report reflects that petitioner was told at 9:48 p.m. that he had two hours to provide a urine sample, and he failed to do so. Att. 5. Petitioner received a copy of the incident report on October 23, 2013, and on that same day the charge was referred to the institution's Discipline Hearing Officer ("DHO"). Id. at ¶¶ 9-10. Also on that same day, petitioner received copies of both the "Inmate Rights at Discipline Hearing" and the "Notice of Discipline Hearing Before the [DHO]." Id. at ¶ 11. Petitioner indicated that he did not wish to have either a staff representative or witnesses at the DHO hearing. Id. He told the investigator that he had been unable to provide a urine sample due to an enlarged prostate, and the investigator commented that "further medical documentation could support that the inmate has prostate problems ...." Id.

A disciplinary hearing was conducted on October 28, 2013. Id. at ¶ 12. Petitioner appeared before the DHO and stated that he had a prostate problem and didn't refuse to go, he "just couldn't go on demand." Att. 5, DHO Report. Among the evidence considered by the DHO was a memorandum from a nurse which stated that petitioner's only chronic medical

---

[1] Respondent's Exhibit 1 is the sworn declaration of Cornelia Coll, a paralegal specialist employed by the Federal Bureau of Prisons ("BOP") at FCC Butner. Appended to the declaration are several attachments, which will be referenced in this Memorandum Opinion as "Att." followed by the appropriate number.

condition was bursitis/tendinitis of his Achilles, and that he had neither complained of any urinary retention since his arrival at the institution nor taken any medication that would cause urinary retention. Id. After reviewing all the evidence, the DHO gave greater weight to the report and e-mails from medical staff, and determined that the elements of the charged offense had been satisfied. Id. Petitioner was sanctioned with the loss of 41 days good conduct time, 45 days of disciplinary segregation, and one year loss of general visitation privileges followed by another year of restricted visitation privileges. He received a copy of the final DHO report on October 31, 2013. Id. at ¶ 14.

On November 23, 2013, petitioner received a second incident report while still confined at FCI Talledega, again charging him with the prohibited act of refusing to provide a urine sample. Id. at ¶ 15. The act giving rise to the charge had occurred that same day, and petitioner also was provided with a copy of the report. Id. On November 25, 2013, petitioner again received copies of "Inmate Rights at Discipline Hearing" and "Notice of Discipline Hearing Before the [DHO]." Id. at ¶ 17. He indicated that he did not wish to have a staff representative present at the DHO hearing, but he did wish to call a psychologist and a physician's assistant as witnesses. Id.

The disciplinary hearing was conducted on December 16, 2013. Petitioner called two witnesses in person who stated that his medication would not prevent him from urinating. One witness, Dr. Rozier, provided a memorandum stating that petitioner had self-reported that his uncle would watch him urinate as a child, and another doctor stated in a document that petitioner had a diagnosis of benign prostate hypertrophy for which he had received medication in the past, and which might affect his ability to urinate. Att. 6, DHO Report. After reviewing the evidence,

the DHO found that the offense elements had been met, and petitioner was sanctioned with the loss of 41 days of good time credit, 60 days of disciplinary segregation, 1 year loss of commissary privileges, and 2 years loss of general visiting privileges followed by 2 years loss of restricted visiting privileges. Id.[2]

In this petition for habeas relief pursuant to § 2241, Danielczyk essentially argues that his right to due process was violated because: 1) the PSI and a physician's letter clearly stated that he has an enlarged prostate; 2) his requests for medical records and a medical examination were denied; 3) he took two urine tests after the incidents at issue and both were "clean," thus showing that he can provide a urine sample when his physical and psychological issues ate taken into consideration; and 4) he suffers from emotional issues stemming his youth when his "pedophile uncle" would watch him urinate.

Respondent acknowledges that petitioner has exhausted his administrative remedies with regard to both disciplinary infractions. See Carmona v. United States Bureau of Prisons, 243 F.3d 629, 634 (2d Cir. 2001); Williams v. O'Brien, 792 F.2d 986, 987 (10th Cir. 1986). Accordingly, this matter is now ripe for review on the merits.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the burden of proving that judgment on the

---

[2]In fact, petitioner actually lost a total only of 54 days good time credit for both infractions, because the BOP only disallows good time credits up to the amount accrued by the end of the year in which the incident occurred.

pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. " [T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

### III. Analysis

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. It is well established that prisoners cannot be subjected to arbitrary discipline by prison


officials. See Howard v. Smyth, 365 F.2d 428 (4th Cir. 1966). When a loss of statutory good-time credits or solitary confinement is at issue, the Supreme Court has mandated procedural safeguards for prison disciplinary hearings, including advance written notice of charges, written findings, and an opportunity, when consistent with institutional safety and correctional goals, for the inmate to call witnesses and present evidence in his defense. Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974); Baker v. Lyles, 904 F.2d 925, 929 (4th Cir. 1990). However, prison inmates have no protected liberty interest in the disciplinary hearing "procedures themselves, only in the subject matter to which they are directed." Ewell v. Murray, 11 F.3d 482, 488 (4th Cir. 1993).

In accordance with Wolff, the BOP has promulgated regulations which dictate the procedures for disciplinary hearings. 28 C.F.R. Part 541 et seq. Pursuant to these rules, when a staff member has a reasonable belief that an inmate has violated a BOP regulation, an incident report must be prepared. 28 C.F.R. § 541.5(a). Specifically pertinent to this case, when an inmate is ordered to provide a urine sample and fails to do so, an incident report is to be issued. BOP Program Statement 6060.08 requires that "[i]f an inmate is unwilling to provide a urine sample within two hours of a request for it, staff must file an incident report. No waiting period or extra time need be allowed for an inmate who directly and specifically refuses to provide a urine sample. ... An inmate is presumed to be unwilling if the inmate fails to provide a urine sample within the allotted time period. An inmate may rebut this presumption during the disciplinary process."

When an incident report is issued, staff is to provide the inmate with a written copy of the charges, usually within twenty-four (24) hours. 28 C.F.R. § 541.5(a). The relevant materials are forwarded to the United Disciplinary Committee for an initial hearing. 28 C.F.R. §541.7. When

the alleged violation is sufficiently serious to potentially warrant more than minor sanctions, the Committee refers the charges to the DHO for further proceedings. 28 C.F.R. § 541.7(g). The inmate is advised of the rights to be afforded at the hearing before the DHO, and is given a chance to choose a staff representative and to provide the names of witnesses he wishes to call at the hearing. 28 C.F.R. §541.8(c)-(f). A staff representative assists the inmate by speaking with and interviewing the requested witnesses. 28 C.F.R. § 541.8(d).

At the DHO hearing, the inmate is entitled to make a statement, to present documentary evidence on his own behalf, and to call witnesses to testify on his behalf. 28 C.F.R. § 541.8(f). The DHO, who must be an impartial decision maker who was not involved in the incident at issue, bases his determination on all of the evidence presented at the hearing. If there is conflicting evidence, the greater weight of the evidence is to prevail. 28 C.F.R. § 541.8(f). The DHO finds that the inmate either did or did not commit the prohibited act, and prepares a record of the proceedings, including the specific evidence relief upon by the DHO is reaching his decision and a brief statement of the reasons for any sanctions imposed. 28 C.F.R. § 541.8(h).

In this case, Danielczyk received all of the due process elements required by Wolff as to both of his disciplinary infractions. As to the incident that occurred on October 22, 2013, he received ample notice of the charges against him, Resp. Ex. 1 at ¶ 11, Att. 5 at 1-2; he was provided with a written copy of his rights at the hearing, id. at ¶ 11; he received written notice of the DHO's findings, id., Att. 5 at 5-7; he did not request staff representation or the appearance of any witnesses, id., Att. 5 at 3-4; and he was permitted to present evidence and to make a statement. Id., Att. 5 at 5-7. Similarly, as to the incident of November 23, 2013, petitioner received timely notice of the charges, Resp. Ex. 1 at ¶ 15, Att. 6 at 1-2; he was provided with a

written copy of his rights at the hearing, id. at ¶ 17; he received written notice of the DHO's findings, id., Att. 6 at 5-8; he did not request staff representation; id. at ¶ 17, Att. 6 at 3; his requested witnesses of a psychologist and a physician's assistant appeared at the hearing and/or provided statements, id. ¶ 17, Att. 6 at 4-6, 12-13; and he was permitted to present evidence and to make a statement, id.. ¶ 19, Att. 6 at 5-8, 11. Under these circumstances, petitioner's right to procedural due process as defined by Wolff was not violated.

With respect to the nature and extent of evidence required in the context of a prison disciplinary hearing, it is settled that due process is satisfied if "some evidence" in the record supports the decision of the DHO. The relevant question is "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board," and the decision is to be sustained even if only a "modicum of evidence" is found. Superintendent v. Hill, 472 U.S. 445, 455-56 (1985). Here, this standard was met as to both of petitioner's infractions. As to the infraction of October 22, 2013, evidence presented at the hearing consisted of the incident report, the investigation, petitioner's own statement, and two BOP staff e-mails provided by the institutional Health Services Administrator and a registered nurse. Resp. Ex. 1 at ¶ 13, Att. 5 at 9-10. The e-mails indicated that at the time of the incident, petitioner had not been on any medication for the past two months that would have impacted his ability to provide a urine sample, nor had he ever previously complained of urine retention. Id. at ¶13, Att. 5 at 9-10. Thus, "some evidence" supported the DHO's determinations that petitioner committed the prohibited act as charged of failing to provide a urine sample, and that he did not have a documented medical condition which would have impacted his ability to do so. Id. at ¶ 12, Att 5 at 6. There is no mention in the records pertaining to this incident of a psychological condition

stemming from the actions of a "pedophile uncle."

As to the infraction of November 23, 2013, the evidence consisted of the incident report, the investigation, petitioner's own statement, e-mails provided by the psychologist witness petitioner requested, a statement from a physician's assistant witness petitioner requested, a memorandum submitted by a registered nurse, and a letter from petitioner's personal physician. Resp. Ex. 1 at ¶ 19, Att. 6 at 5-6, 10-13. The physician's assistant stated that the medication petitioner was receiving for his prostate condition would not have prevented him from providing a urine sample within the allotted two-hour time period. Id. The registered nurse concurred with that assessment. Id. at ¶ 19, Att. 6 at 10. The psychologist provided a written statement that petitioner had reported to the Psychology Department two days after the incident in question that he had an uncle who would watch him use the restroom as a child, and he found this to have been a very traumatic and embarrassing experience that had caused him to have difficulty urinating in public ever since. The psychologist stated that "from a psychological perspective, it would not be unheard of for a situation like this to contribute to difficulty urinating in public," but noted that "this is all self-report on the inmate's part" and deemed it "noteworthy" that petitioner had not reported this information to the Psychology Department in connection with his first incident report for the same prohibited act. Id. at ¶ 19, Att. 6 at 12. The psychologist further noted that there was no documentation that petitioner had ever told anyone of his childhood trauma prior to receiving the second incident report. Id. at 12-13. Lastly, petitioner's personal physician stated in a letter that petitioner had "a diagnosis of benign prostatic hypertrophy for which he has been on medication in the past and also has been urology. This may affect his ability to urinate." Id. at ¶ 19, Att. 6 at 11.

As to both incidents, then, clearly there was "some evidence" presented to support the DHO's determinations that petitioner twice committed the prohibited act of failing to provide a urine sample. Id. at ¶¶ 12, 18. That being so, the analysis for federal purposes is at an end, and petitioner's claim that he was deprived of due process fails. Hill, supra; see also, Barry v. Whalen, 796 F.Supp. 885, 896 (E.D. Va. 1992) (under the "highly deferential" standard of Hill, a court will not second-guess a DHO's determination where evidence exists to support his findings).

On April 2, 2015, petitioner submitted a response to respondent's Motion for Summary Judgment, supported by his own declaration, two "general affidavits," and several exhibits. Essentially, petitioner argues that the evidence presented at the hearings was insufficient to rebut his argument that his prostate condition prevents him from being able to urinate on demand.[3] These submissions miss the mark. As noted above, the only relevant inquiry in determining whether due process was served in a prison disciplinary action is whether "some evidence" supports the DHO's conclusion. Hill, 472 U.S. at 455-56. Judicial review of such a determination is not *de novo*, and a court is not free either to reweigh the evidence presented at the disciplinary hearing or to consider new evidence not presented there. Id. To be sure, so long as the disciplinary decision has "some basis in fact," due process is satisfied, and a reviewing court may not second-guess the result even if it might have reached a different conclusion. Id. at 457.

Here, for the reasons discussed above, there patently was "some evidence" presented at

---

[3]Petitioner does not appear to mention the psychological condition allegedly caused by his "pedophile uncle" in any of the documents that comprise his reply.

both of petitioner's disciplinary hearings to support the conclusion reached by the DHO. His implicit argument that the Court should now reweigh the evidence presented at those hearings or consider the new evidence he now seeks to introduce must be rejected pursuant to Hill. Similarly, his apparent belief that the BOP should be held to the standard of proving its disciplinary action to reasonable degree of medical certainty is simply incorrect; to the contrary, it was petitioner's burden to show as an affirmative defense at the disciplinary hearing that his medical condition prevented him from complying with the instructions to provide a urine sample. 28 C.F.R. § 550.31 ("An inmate is presumed to be unwilling if the inmate fails to provide a urine sample within the allotted time period. An inmate may rebut this presumption during the disciplinary process.") Petitioner's allegations that the BOP intentionally prevented him from creating a record or presenting his side of the story at the disciplinary proceedings are contradicted by the record, as discussed above.

## IV. Conclusion

For the foregoing reasons, respondent's Motion for Summary Judgment will be granted, and summary final judgment will be entered in its favor. An appropriate Order shall issue.

Entered this 23rd day of June 2015.

Alexandria, Virginia

/s/
James C. Cacheris
United States District Judge

11